JUNE TERM
1837.

Chouteau
v.
Russell.

———◦✖◦———

## CHOUTEAU v. RUSSELL.

A purchaser of land agreed to pay the purchase money, on the delivery of the patents. Held, that vendor cannot recover in a court of law, without a compliance with the condition precedent, notwithstanding an act of Congress passed subsequently to the making of the agreement may have rendered the delivery or tender of the patents impracticable or unnecessary.

ERROR to the circuit court of St. Louis county.

Points and citations of authorities, made by *Gamble,* attorney for plaintiff in error.

1st. The plaintiff in error alleges that though this was a condition precedent to the promise to pay upon a past consideration, yet as the performance has been prevented by the act of the law, the plaintiff is entitled to recover—3 Com. Digest, 125; Bul. N. P. 184.

2nd. It is further asserted that where by a law passed, after the obligation is made, the performance of a condition is rendered unnecessary, the duty immediately arises—2 Bibb, 561.

3rd. Here the act of 1831 is equivalent to a general patent.

Points and citations of authority, made by *Geyer*, attorney for defendant in error.

1st. The defendant in error insists that the declaration shews no cause of action against the defendant.— Because, if the performance of the condition precedent by the plaintiff had been rendered impossible by the act of Congress, the covenant of the plaintiff would not thereby have become absolute.

2nd. The act of Congress of January, 1831, did not in any manner render the performance of the condition precedent impossible, nor did it in any manner change the rights or obligations of the parties.

Statement of the case made, and opinion of the court delivered by TOMPKINS, Judge.

This was an action of covenant, brought by Chouteau in the circuit court of St. Louis county, against Russell.

That court gave judgment for Russell, and to reverse that judgment, Chouteau brings up the case by writ of error.

The declaration states that Russell, on the 30th day of December, in the year 1829, made his deed poll; whereby he promised to pay to the plaintiff, two years after the date thereof, or so soon afterwards, and not before, as the said plaintiff should deliver to the said Russell the patents from the United States, for two tracts of land, conveyed on the day of the date of the said deed poll, by the said plaintiff to the said defendant, the just and full sum of two thousand dollars, with interest at the rate of six per cent. a year, from and after, but not before, the said two land patents should be delivered to the defendant.

The plaintiff then, avers that the said two tracts of land in the said deed poll mentioned, are two out lots adjoining the town of St. Louis; the titles to which, were confirmed by the first section of the act of Congress, entitled "An act making further provision for settling the claims to land in the territory of Missouri," passed the 13th day of June, in the year 1812; and that after the making of the said deed poll, and before the expiration of two years after the date of the said deed poll, to wit: on the 27th day of January, in the year 1831, a certain act of Congress was passed, whereby it was enacted by the Senate and House of Representatives in Congress assembled, that the United States did thereby relinquish to the inhabitants of the several towns and villages of Portage De Sioux, St. Charles, St. Louis, &c. in the State of Missouri, all the right, title and interest of the United States, in and to the town or village lots, common field lots, and commons in and adjoining and belonging to the said towns or villages, confirmed to them respectively, by the first section of the act of Congress, entitled "An act making further provision for settling the claims to land in the territory of Missouri, passed 13th June, 1812." To be held by the inhabitants of the said towns and villages in full property, according to their several rights therein—to be regulated or disposed of for the use of the inhabitants, according to the laws of the State of Missouri. The plaintiff further averred, that from the passage of the said act of Congress, on the said 27th day of January, in the year 1831; and from thence hitherto, the United States have not issued, and will not issue patents for any town or village lots, out lots, &c., so relinquished by the United States as provided in the last mentioned act of Congress; the plaintiff further avers, that he

71

has been prevented from obtaining the patents from the United States for the two tracts of land in the said deed poll mentioned, by the passage of the said act of Congress, on the said 27th day of January, in the year 1831.

The defendant pleaded in bar, that the plaintiff did not any time before the commencement of this suit, deliver to him the patents from the United States for the two tracts of land, which the plaintiff had sold to him on the day of the date of the said deed poll. To this plea of the defendant, the plaintiff demurred. The circuit court gave judgment on the demurrer for the defendant.

For the appellant, it is contended that the patents have been rendered unnecessary by the act of Congress, and the non performance of his contract will be excused. And he cites Peart's heirs vs. Taylor's devisees, 2 Bibb, 561.

The appellee contends that the act of Congress did not render the performance of the condition precedent impossible, nor change the rights or obligations of the parties. The case of Peart's heirs vs. Taylor's devisees was, this Peart employed Taylor at his own proper cost and charge, to survey, platt and patent, 2000 acres of land; to clear lands, build houses, plant orchards, and to do every thing to save and secure the land, according to the King's proclamation and the colonization act; and after Taylor had surveyed, platted, and patented the said land, and given sufficient security for the faithful performance of the latter, he was to make him a fee simple deed to 700 acres of the said lands. Taylor, in the year 1774, executed the survey in Kentucky, on said warrant.— In the year he was killed by the Indians, in Kentucky; but the surveys executed by him were returned to the surveyor's office by those who were of his company, and upon one of those surveys a patent issued for two thousand acres, a part of which is the subject of the present controversy. The court say, "by the contract, it seems that Taylor was bound to clear lands, build houses, plant orchards, and to do every thing necessary to save and secure the land, according to the King's proclamation and the colonization act." If those stipulations were required for the purpose also, of adding value to the land, they must certainly deserve great weight in the present contest; but how much land, what description of houses, or what sort or number of fruit trees were to be cleared, made and planted? The whole is left uncertain with regard to a supposed or definite value of the land. But to

this inquiry a measure is presented, which seems at once to evince the then object of that provision in the contracts: it was to *save* and *secure* the land; without this, the residue is totally uncertain in its extent or value, and could therefore, form no substantial or essential part of the agreement. But the land seems to be *safe* and *secure* to Peart and his heirs, from the act, the labor, blood and money of Taylor; and shall they, against the great and leading objects of that contract, be permitted to ward off their claim upon trivial or mere nominal pretences? Equity and good conscience forbid it.

But how stands the present case? Does the last act of Congress, viz: that of 1831, make the appellee's title any better than that of 1812? He bargained to pay his money when patents should be delivered to him for the very land, and not before. He wished a patent to prove himself entitled to the very spot, and he is told that the act of Congress will answer his purpose as well, and he must pay the money; and that the United States will grant no more patents. Whether the act of Congress will answer his purpose as well as a patent, is not so very obvious; but if it were better than the patent, as that is the very thing bargained for by both parties, it seems hard to tell the appellee he shall take some other thing. In the case cited from Bibb, every thing essential was done by the petitioner. Here, the only thing the plaintiff contracted to do was left undone. If in fine, he shall be unable to procure a patent, he must seek some other relief, or must seek it in another form. A court of chancery might decree that the contract for the sale of the land be rescinded, unless the money were paid, which was the consideration of the sale. It is my opinion that the judgment of the circuit court ought to be affirmed, and the presiding Judge concurring with me in that opinion, it is affirmed.

McGIRK, Judge. I concur in the foregoing opinion, and the judgment is affirmed.